NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-1536

ANDERSEN CORPORATION,

Plaintiff/Counterclaim Defendant-
Appellant,

v.

PELLA CORPORATION,

Defendant-Appellee,

and

W.L. GORE & ASSOCIATES, INC.,

Defendant/Counterclaimant-
Appellee.

Ronald J. Schutz, Robins, Kaplan, Miller & Ciresi L.L.P., of Minneapolis, Minnesota, argued for plaintiff/counterclaim defendant-appellant. With him on the brief were Ronald J. Schutz, Becky R Thorson, David P. Swenson, Busola A. Akinwale and Mary E. Kiedrowski.

Aaron D. Van Oort, Faegre & Benson LLP, of Minneapolis, Minnesota, argued for defendant-appellee. With him on the brief were Calvin L. Litsey, James W. Poradek, Chad Drown and Kevin P. Wagner.

Jessica L. Copeland, Morgan & Finnegan LLP, of New York, New York, argued for defendant/counterclaimant-appellee. With her on the brief was Harry C. Marcus.

Appealed from: United States District Court for the District of Minnesota

Chief Judge James M. Rosenbaum

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-1536

ANDERSEN CORPORATION,

        Plaintiff/Counterclaim Defendant-Appellant,

v.

PELLA CORPORATION,

        Defendant-Appellee,

and

W. L. GORE & ASSOCIATES, INC.,

        Defendant/Counterclaimant-Appellee.

Appeal from the United States District Court for the District of Minnesota in 05-CV-00824, Chief Judge James M. Rosenbaum.

_____

DECIDED: November 19, 2008

_____

Before RADER and SCHALL, <u>Circuit Judges</u>, and ALSUP, <u>District Judge</u>.[*]

SCHALL, <u>Circuit Judge</u>.

## DECISION

Andersen Corporation ("Andersen") appeals from the final judgment of the United States District Court for the District of Minnesota which dismissed Andersen's suit

---

[*]      Honorable William Alsup, District Judge, United States District Court for the Northern District of California, sitting by designation.

against Pella Corporation ("Pella") and W.L. Gore & Associates, Inc. ("Gore") (together "Appellees") for infringement of independent claims 22 and 76 and dependent claims 12, 23-29, 55, 59, and 65 of Andersen's U.S. Patent No. 6,880,612 (the "'612 patent"). The court entered judgment after determining on summary judgment that the asserted claims of the '612 patent were invalid by reason of obviousness. See Andersen Corp. v. Pella Corp., 500 F. Supp. 2d 1192 (D. Minn. 2007). Andersen also appeals the district court's dismissal without prejudice of Gore's unresolved counterclaim relating to unasserted claims in the '612 patent, arguing that the dismissal should have been with prejudice.

Because we conclude that there exist genuine issues of material fact as to whether one of skill in the art would have looked to the prior art upon which the district court based its grant of summary judgment of obviousness, we hold that the district court erred in granting summary judgment of invalidity in favor of Pella and Gore. We therefore vacate the judgment dismissing Andersen's complaint and remand the case to the district court for further proceedings. We affirm, however, the district court's dismissal without prejudice of Gore's counterclaim.

DISCUSSION

I.

The '612 patent claims a reduced visibility insect screen. Conventional insect screens typically consist of thick wires or fibers woven in a grid pattern. Such screens obstruct the view through the windows and doors in which they are installed. The screen claimed in the '612 patent comprises fine, thin wires woven tightly together. The

result is a screen more transparent than conventional insect screens. An exemplary claim from the '612 patent is independent claim 76:

> An insect screening material in a frame removably attached to a fenestration unit that permits ventilation therethrough and having reduced visibility, comprising a plurality of screen elements having a diameter of 0.007 inch or less, the screen elements having a tensile strength greater than 5500 psi, wherein the screening has a transmittance of light of at least 0.75 and a reflectance of light of .04 or less.

'612 patent, col.19 l.3-9.

The accused device, a reduced visibility insect screen made by Pella, is sold under the name VividView®. Andersen sued Pella and its supplier Gore alleging that the VividView® device infringes the '612 patent. Gore and Pella asserted affirmative defenses of invalidity and unenforceability, while Gore asserted a counterclaim that each of the claims of the '612 patent is invalid. During discovery, Andersen identified the claims that Pella and Gore allegedly infringed as claims 12, 22-29, 55, 59, 65, and 76. Gore and Pella jointly moved for summary judgment, challenging the validity of the asserted claims of the '612 patent. For its part, Andersen moved for summary judgment on the defenses of Gore and Pella and also on Gore's counterclaim of invalidity. By a September 28, 2008 order, the district court denied all motions for summary judgment.

Just weeks before the scheduled date of trial, Gore and Pella moved to re-open their motions for summary judgment in light of the United States Supreme Court's discussion of the obviousness standard in KSR International Co. v. Teleflex, Inc., 550 U.S. --, 127 S. Ct. 1727 (2007). In KSR, the Supreme Court reversed our reversal of the district court's grant of summary judgment of invalidity on the ground of obviousness in favor of KSR. 127 S. Ct. at 1745-46. According to the Court, we applied too rigidly the requirement that an obviousness challenge demonstrate a teaching, suggestion,

and motivation to combine known elements (the "TSM test") and failed to give due weight to the nature of the problem to be solved and common sense. Id. at 1741-43.

Taking into consideration KSR, the district court granted Gore and Pella's motion to re-open the motions for summary judgment on the limited issue of obviousness, and the court requested further briefing from the parties. In their briefs and at oral argument before the district court, Gore and Pella asserted that the invention claimed in the '612 patent was rendered obvious by an electromagnetic-shielding mesh manufactured by TWP, Inc. ("TWP") in combination with Japanese Patent No. 195646, disclosing a method of coating a screen with light absorbable black color to reduce reflection. These two references were the basis of an obviousness rejection of Andersen's patent application by the United States Patent and Trademark Office ("PTO"). Eventually, however, the application issued as the '612 patent after Andersen overcame the rejection by amending its claims to include the limitation "in a fenestration unit that permits ventilation there through."

Applying the test for obviousness under 35 U.S.C. § 103(a), the district court began with an analysis of the primary obviousness factors delineated in Graham v. Deere Co. of Kansas City, 383 U.S. 1, 17-18 (1966): (1) scope and content of the prior art, (2) the differences between the prior art and claimed invention, and (3) the level of ordinary skill in the art. Andersen, 500 F. Supp. 2d at 1195-97. Since the court found that the defendants had made out a prima facie showing of obviousness under these primary factors, it then weighed the secondary considerations of nonobviousness discussed in Graham, 383 U.S. at 17-18, including commercial success, long felt but unmet need, and failure of others. Andersen, 500 F. Supp. 2d at 1197-98. Under the

direction of <u>KSR</u>, the court rejected "a 'rigid approach,' in favor of an 'expansive and flexible approach' using 'common sense' when assessing whether an invention would have been obvious to a person of ordinary skill in the art." <u>Andersen</u>, 500 F. Supp. 2d at 1195 (quoting <u>KSR</u>, 127 S. Ct. at 1739, 1742-43).

In due course, the district court granted Appellees' motion for summary judgment, holding the asserted claims of Andersen's '612 patent obvious and the patent invalid as a matter of law. <u>Id.</u> at 1198. In its discussion of obviousness, the court asked, "[W]ould an insect screen manufacturer of ordinary skill have found it obvious to use the TWP screening material, decrease its reflectance value, bond it, and place it in a window frame?," to which it responded, "The answer, plain and simple is 'Yes.'" <u>Id.</u> at 1195. In arriving at this conclusion, the court found that the "heart of Andersen's claimed invention" was the TWP mesh, which had been available on the internet and in use prior to submission of Andersen's patent application, and that it was a "simple act of common sense—rather than of invention—for an insect screen designer of ordinary skill to look [to it]." <u>Id.</u> at 1195-96. The court then considered secondary factors, only to find that they could not rebut the strong prima facie showing of obviousness. <u>Id.</u> at 1197.

Andersen filed a Notice of Appeal within 30 days of the summary judgment ruling. However, Gore's pending declaratory judgment counterclaim of invalidity relating to no-longer-asserted claims of the '612 patent prevented the district court's judgment from being final. Gore therefore moved to dismiss its counterclaim without prejudice. Andersen moved to dismiss its own appeal before the district court decided Gore's motion to dismiss. On November 25, 2007, this court denied Andersen's motion to dismiss its own appeal and stayed briefing until the district court addressed Gore's

pending motion. On February 21, 2008, the district court granted Gore's motion to dismiss its counterclaim without prejudice, and the parties proceeded to brief their cases on appeal to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) (2006).

II.

We "review the grant of summary judgment de novo, drawing all reasonable inferences in favor of the non-moving party." Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1323 (Fed. Cir. 2002) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). Summary judgment is appropriate "where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1116 (Fed. Cir. 1985) (en banc).

Andersen argues that the district court erred in granting summary judgment of invalidity by reason of obviousness because it raised genuine issues of material fact with respect to whether one of ordinary skill in the art (here, "someone who manufactures insect screens with no understanding of optics and physics," Andersen, 500 F. Supp. 2d at 1195) seeking to design an insect screen with reduced visibility would have looked to the TWP mesh. Appellees respond that the district court correctly granted summary judgment in their favor because it would have been obvious to an ordinarily skilled artisan to select TWP mesh—a commercially available highly transparent screening material—as a material appropriate for a reduced visibility insect screen.

We agree with Andersen that genuine issues of material fact exist as to whether it would have been obvious to an insect screen designer of ordinary skill to use the TWP mesh as screening material for a reduced visibility insect screen. We begin, as the

2007-1536                                     6

district court did, by looking at evidence relating to the primary obviousness factors. We agree with the district court that Andersen failed to raise a genuine issue of material fact as to two of the factors: the differences between the prior art and the claimed invention and the level of skill in the art. We do not agree, however, with the district court's finding that no genuine issue of material fact exists as to the scope and content of the prior art.

Upon our review of the record in the light most favorable to Andersen, we find support adequate to overcome summary judgment on the question of whether the TWP mesh was outside the scope and content of the prior art. Andersen put forth evidence in the record that, one, the TWP mesh was not part of the insect screen manufacturing field, and, two, an insect screen manufacturer would have read the prior art to teach away from using a mesh with the characteristics possessed by the TWP mesh. This field-of-invention and teaching-away evidence, combined with the deference owed to the PTO's issuance of this patent after reviewing the same prior art references that form the basis of this obviousness challenge, raises a genuine issue of material fact as to whether an ordinarily skilled insect screen designer would have found the combination of the TWP mesh with the other prior art references obvious.

Andersen submitted the TWP website as evidence that the TWP mesh used by Andersen was beyond the field of invention. The TWP website posted links to separate webpages for "Technical Information" pertaining to, among other things, an "Insect screen" and a "High Transparency" screen. The TWP mesh used by Andersen was found, not under the "Insect Screen" link, but under the "High Transparency" screen link. The "High Transparency" webpage described the use of these "optical grade" meshes

as electromagnetic shielding in shielded windows and cathode ray tubes (CRTs). In contrast, the "Insect Screen" webpage noted the "wide range of industrial and commercial applications" available for insect screening and did not include electromagnetic-shielding meshes.

The district court was not persuaded that the advertised use of the TWP mesh removed it from the field of invention. It correctly observed that the TWP mesh's "advertised use [as] electromagnetic shielding . . . does not mean it was not available for other uses." Andersen, 500 F. Supp. 2d at 1196. Indeed, as the district court noted, KSR teaches that common sense might make alternative uses of familiar items obvious and that design incentives and other market forces can prompt variations of a work. See id. (citing KSR, 127 S. Ct. at 1740, 1742). The court found that common sense and the nature of the problem to be solved would have made it obvious to use the TWP electromagnetic-shielding mesh as an insect screen. Id.

While we agree that common sense and the nature of the problem to be solved could lead an insect screen designer to a mesh primarily used for a purpose besides insect screens, we find that in this case Andersen raised a genuine issue of fact as to whether the electromagnetic-shielding mesh would have been part of the field of invention searched by an insect screen designer and whether such an alternative use would have been obvious. See Para-Ordnance Mfg., Inc. v. SGS Imps. Int'l, Inc., 73 F.3d 1085, 1088 (Fed. Cir. 2005) ("[W]hether [the prior art] teaches toward or away from the claimed invention also is a determination of fact."). The fact that TWP's use for the mesh was electromagnetic shielding and that TWP, a company that manufactures insect screens, did not employ this particular mesh as an insect screen suggests that

common sense and the nature of the problem to be solved might not have made it obvious to an insect screen designer to try using the mesh as an insect screen.

Andersen also submitted into the record prior art references that taught away from using the TWP mesh as an insect screen. Several prior art references in the record teach that the TWP mesh possessed many characteristics that an ordinary skilled insect screen designer would have viewed as undesirable for an insect screen. Specifically, the record at least raises the question of whether the TWP mesh lacked the durability, transparency, and price feasibility preferred by an insect screen manufacturer designing a reduced visibility insect screen.

Andersen submitted evidence that durability is a desirable characteristic of insect screens because they experience wear and tear from exposure to daily weather conditions and interactions with humans and pets. Appellant's Br. at 36-37. In that regard, the TWP website called the electromagnetic-shielding mesh used by Andersen the "world's most delicate metal fabric" and specified that it requires "great care in handling." The Sims Patent, a prior art reference also before the PTO examiner, teaches that fine mesh should only be removed from the glass panes if it will not be subject to accidental damage and contact. U.S. Patent No. 5,012,041, col.3 l.51-56 (filed Jun. 22, 1989). According to Andersen, the delicacy of the TWP mesh, its need for special care, and its vulnerability to damage upon contact could discourage an insect screen designer from using it.

Andersen also presented evidence that using TWP mesh in an insect screen would not, relative to conventional screens, heighten its transparency—the main objective of the invention. Appellant's Br. at 38-39. Andersen cites the Sims Patent for

its teaching that fine mesh produces optical interference, not invisibility, due to the "distracting effects if . . . the wire grid is too fine." Id., col.1 l.48-53. Evidence that the TWP mesh used by Andersen qualifies as a fine mesh that might be shiny according to the Sims Patent comes from the TWP website, which describes the wire comprising the mesh as "many times finer than a single strand of human hair." This evidence is somewhat contradicted by the fact that the TWP website also advertises this mesh as "highly transparent," but that description does not specify that the mesh was highly transparent relative to insect screens. Given the evidence, a person of ordinary skill in the insect screen art arguably would not think that increasing the number of wires in combination with decreasing the diameters of the wires would yield an insect screen with reduced visibility.

As to the third characteristic, pricing, Andersen's expert, Laurence Armstrong, stated that the TWP mesh was "extraordinarily expensive in comparison with traditional insect screen material, costing about $75.00 per square foot." It is not unreasonable to suggest that a significant difference in cost could discourage an insect screen designer from using the more expensive mesh.

The district court, however, was not persuaded that this teaching-away evidence presented a genuine issue of material fact. The court acknowledged that the Supreme Court in KSR approvingly cited United States v. Adams, 383 U.S. 39, 51-52 (1966), for the "principle that when the prior art teaches away from combining certain known elements, discovery of a successful means of combining them is more likely to be nonobvious." 127 S. Ct. at 1739-40. The district court, however, found Andersen's evidence of teaching away "disingenuous" in the face of the TWP website's reference to

the screen as "highly transparent" and capable of use in "shielded windows." Andersen, 500 F. Supp. 2d at 1196. In essence, the district court found that the teaching toward evidence outweighed the teaching-away evidence in the record.

We disagree with the district court in its evaluation of the teaching-away evidence. On the whole, we think, the record creates a genuine issue of material fact as to whether the durability, transparency, and pricing of the TWP mesh would have discouraged an ordinarily skilled artisan from incorporating the mesh into an insect screen. Recognizing that the Supreme Court in KSR cautioned us to not be too rigid in applying the TSM test, we may still consider evidence of teachings to combine (and, presumably, not to combine) because, according to the Supreme Court, they "capture[ ] a helpful insight" into the obviousness inquiry. 127 S. Ct. at 1741. Unlike in KSR where the Supreme Court concluded that "Teleflex ha[d] not shown anything in the prior art that taught away from the [combination of prior art references]," Andersen has raised a genuine issue of material fact as to whether the prior art taught away from using TWP mesh as an insect screen. Id. at 1745.

We also note that, in ruling on summary judgment, the district court was required to view the evidence with an eye towards the burden on Gore and Pella to overcome the deference due to the PTO. As "[t]he Supreme Court stated in Anderson, . . . 'in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden.'" Enzo Biochem, Inc. v. Gen-Probe Inc., 424 F.3d 1276, 1284 (Fed. Cir. 2005) (quoting Anderson, 477 U.S. at 254). As we have explained, the PTO examiner's issuance of the patent is entitled to deference:

> When no prior art other than that which was considered by the PTO examiner is relied on by the attacker, he has the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents.

PowerOasis, Inc. v. T-Mobile USA, Inc., 522 F.3d 1299, 1304 (Fed. Cir. 2008) (quoting

Am. Hoist & Derrick Co. v. Sowa & Sons, Inc., 725 F.2d 1350, 1359 (Fed. Cir. 1984)).

In this case, the TWP mesh is one of many references which Andersen submitted to the PTO during prosecution. Indeed, the prosecution history makes clear that the PTO examiner initially denied claims of the patent application as anticipated by the commercially available TWP mesh and obvious in light of the TWP mesh combined with Japanese Patent No. 195646 describing darkening a framed screen door. Andersen overcame those rejections, however, and the PTO provided the following reason for allowance: "The prior art does not disclose the screen material which has the structure recited which is used as an insect screen . . . ." Unlike in KSR where the PTO did not consider the prior art reference that ultimately rendered the patent obvious, 127 S. Ct. at 1729, the PTO examiner in this case considered whether the TWP mesh in combination with other references rendered obvious the application that issued as the '612 patent. In evaluating Gore and Pella's joint motion for summary judgment of patent invalidity on the basis of obviousness, the district court needed to consider the additional burden born by Gore and Pella of overcoming the deference owed to the PTO.

Since we find that the record creates a genuine issue of material fact as to whether the '612 patent was obvious under the primary obviousness factors, we need

not examine the secondary obviousness factors in any depth. That aside, we note that Andersen submitted evidence of long-felt need, the failure of others, unexpected results, copying by Gore and Pella, and praise by others. The record includes patent applications by Gore explicitly discussing the long-felt need in the industry for an invisible insect screen. That long-felt need was further illustrated by the fact that, at the time of initial summary judgment motions, Gore had submitted several patent applications in the United States on "Insect Screen with Improved Optical Properties." The record also reflects failure of others in that, for decades, Pella and others tried to minimize visibility of insect screens by alternative methods, but failed. As for unexpected results, in its own patent application, Gore acknowledged the "surprising visual effects of the invention" and unexpected results of the narrowly woven mesh. Andersen also presented evidence of praise by others, including by Pella and Gore. The district court noted that the other secondary factor, commercial success, favored Gore and Pella. See Andersen, 500 F. Supp. 2d at 1197. Even so, Andersen presented evidence suggesting that the majority of secondary considerations favored dislodging an obviousness determination based on the primary obviousness factors.

Review of the record in the light most favorable to Andersen reveals that Andersen provided sufficient evidence of nonobviousness to overcome summary judgment.

III.

Andersen also argues that the district court abused its discretion when it dismissed Gore's unresolved counterclaim without prejudice under Rule 41(a) of the Federal Rules of Civil Procedures and that the error was not harmless. Rule 41(a)(2)

provides that after an answer or motion for summary judgment has been filed, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Andersen contends that Gore failed to take any steps to prosecute its counterclaim, to explain its desire to dismiss its counterclaim, and to provide an excuse for waiting to file its motion to dismiss until after the district court granted summary judgment. Appellant's Br. at 58-60. Andersen's alleged prejudice is that Gore avoided an adverse determination on the merits and essentially received a "do-over." Appellant's Br. at 59.

Because dismissal with or without prejudice is a question of procedure, we apply the law of the regional circuit. See Intel Corp. & Dell Inc. v. Commonwealth Scientific & Indus. Research Org., 455 F.3d 1364, 1369 (Fed. Cir. 2006). This case arises out of the Eighth Circuit, and the Eighth Circuit reviews a district court's dismissal without prejudice under Rule 41(a)(2) for abuse of discretion. Paulucci v. City of Duluth, 826 F.2d 780, 782-83 (8th Cir. 1987). To determine whether to dismiss with or without prejudice, the district court must consider the appropriate factors, including "whether the party has presented a proper explanation for its desire to dismiss; whether a dismissal would result in a waste of judicial time and effort; whether a dismissal will prejudice the defendants; and whether a dismissal is sought merely to escape an adverse decision or to seek a more favorable forum." Highway Equip. Co. v. FECO, Ltd., 469 F.3d 1027, 1034 Fed. Cir. 2006) (applying Eighth Circuit law).

We see no abuse of discretion in the district court's dismissal without prejudice. The court considered the briefs and memoranda submitted by the parties and found that dismissal without prejudice was proper. Upon applying the Highway Equipment factors

to the record in this case, we find that the court properly exercised its discretion in finding that those factors favored dismissal without prejudice. In the briefs and memorandum, Gore explained that after entry of summary judgment in favor of Appellees on the invalidity of the asserted claims of the '612 patent, it no longer needed the counterclaim as to the unasserted claims. A dismissal of a declaratory judgment counterclaim as to unasserted claims conserves judicial resources. While the motion was presented relatively late in the proceeding (that is, once the district court granted judgment of invalidity on the asserted claims), Gore explained that Andersen continued to narrow the claims throughout the proceedings, and that once the counterclaim obstructed a timely resolution of the case through immediate appeal, it entered its motion. Most importantly, Andersen presented no evidence of prejudice besides a fear of a second action on the unasserted claims, and "the mere prospect of a second law suit" does not constitute sufficient legal prejudice to defeat a motion to dismiss without prejudice. New York, C. & St. L. R. Co. v. Vardaman, 181 F.2d 769, 770 (8th Cir. 1950) (quoting Cone v. W. Va. Pulp & Paper Co., 330 U.S. 212, 217 (1947)). The district court did not abuse its discretion in finding that the Highway Equip. factors favored a dismissal without prejudice.

In sum, because we conclude that genuine issues of material fact remain as to obviousness, we vacate the judgment entering summary judgment of invalidity in favor of Appellees and dismissing Andersen's complaint. The case is remanded to the district court for further proceedings. We affirm the court's dismissal without prejudice of Gore's counterclaim.

## COSTS

Each party shall bear its own costs.